# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

HENRY T. SPIVERY,

        Plaintiff,

    v.                              Case No. 17-cv-1256-pp

CHERYL EPLETT,[1]

        Defendant.

---

**ORDER DENYING PETITIONER'S MOTION REQUESTING APPOINTED ATTORNEY (DKT. NO. 18), GRANTING RESPONDENT'S MOTION FOR EXTENSION OF TIME TO FILE BRIEF *NUNC PRO TUNC* (DKT. NO. 24), DISMISSING PETITION FOR WRIT OF *HABEAS CORPUS*, DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

On September 15, 2017, the petitioner, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2014 conviction in Milwaukee County for attempted second-degree sexual assault of a child. Dkt. Nos. 1, 22-1 at 2. On July 24, 2018, the petitioner filed an amended petition, dkt. no. 10, and a supporting brief, dkt. no. 11. On July 20, 2020, the court screened the amended petition and allowed the petitioner to proceed on two of his claims. Dkt. No. 15.

---

[1] The petitioner is incarcerated at Oshkosh Correctional Institution. <u>See</u> https://appsdoc.wi.gov /lop/home.do. The warden of that institution is Cheryl Eplett. <u>See</u> https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/ OshkoshCorrectionalInstitution.aspx (last visited September 23, 2022). Under Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the court has updated the case caption to reflect the appropriate respondent.

On August 26, 2020, the petitioner filed a motion requesting that the court appoint him an attorney; he attached to the motion two letters he previously had sent to attorneys asking them to represent him. Dkt. Nos. 18, 18-1. Two weeks later, the petitioner filed additional letters that he had sent to attorneys asking them to litigate the case. Dkt. No. 19. The respondent filed an answer to the petition on October 19, 2020. Dkt. No. 22. The petitioner filed a "Reply to Respondent's Answer" on October 28, 2020. Dkt. No. 23. About five weeks later, the respondent filed a motion for extension of time to file an opposition brief. Dkt. No. 24. Before the court ruled on the motion for an extension, the respondent filed her brief, dkt. no. 25, and the petitioner filed a reply brief, dkt. no. 26. The petitioner then filed a "Traverse in Support of the Writ of Habeas Corpus," which the court construes as a reply brief in support of the petition. Dkt. No. 26.

The court will deny as moot the petitioner's request to appoint counsel. The court will grant the respondent's motion for an extension of time, *nunc pro tunc*. Because the petitioner is not entitled to relief under 28 U.S.C. §2254(d), the court will deny the petition and dismiss the case.

## I.     Background

### A.     State Case

#### 1.     *Factual background*

On August 5, 2014, the Milwaukee County District Attorney's Office filed a criminal complaint charging the petitioner with attempted second-degree sexual assault of a child. Dkt. No. 22-2. The complaint alleged that the victim

was under the age of sixteen, and that the petitioner was the victim's "maternal grandmother's boyfriend whom she ha[d] known for about [six] months." Id. The complaint further alleged that "on or about Wednesday, July 30, 2014," the victim

> was sleeping at her mom's house . . . and woke up to someone kissing up and down her left arm and neck. She recognized [the petitioner's] head as the person kissing her. [The petitioner] was leaning across the foot end of the bed toward her. [The victim] then yelled and heard [the petitioner] say, "don't tell don't tell. I'll give you money". Other family members woke up and noticed [the petitioner's] belt unbuckled and his pants undone. [The petitioner] admitted to family members he "did it but didn't touch her". [The petitioner] then crawled out a window, was followed and detained by family mem[]bers until the police arrived.
>
> [The petitioner] told the police he needed help and he did kiss her right arm. [The petitioner] stated he was arrested in 1983 for sexual assault in Oklahoma and spent 29 years in prison and did not get the help he needed in prison.[2]

Id.

### 2. *Plea hearing*

The petitioner waived his right to a preliminary hearing. See Dkt. No. 22-3 at 3. On September 25, 2014, the Milwaukee County Circuit Court conducted a change-of-plea plea hearing. Dkt. No. 22-8. Upon the court's request to "[s]ummarize the negotiations," Assistant District Attorney Erin Karshen stated that (1) the petitioner "[would] be pleading as charged," (2) "[t]he State [would] be recommending prison, leaving the amount up to the Court," and (3) "[t]he

---

[2] The Wisconsin Court of Appeals' decision affirming the petitioner's conviction redacted the victim's identifying information from the criminal complaint. This court will do the same.

3

State [would] be requesting a [presentence investigation]." Id. at 3. The court asked the petitioner and his attorney, Patrick Flanagan, whether they agreed with the State; each indicated that they did. Id. at 3-4.

After the petitioner stated that he wanted to enter a plea, id. at 4, the court conducted an extensive colloquy, id. at 4-15. The petitioner testified that he understood he was pleading to second-degree sexual assault of a child. Id. at 4. He stated that he understood a conviction for such a crime meant (1) a maximum sentence of twelve and a half years of initial confinement followed by seven and a half years of extended supervision and a $50,000 fine, id.; (2) he would lose the right to possess a firearm, id.; (3) he would not be able to vote in any election until the restoration of his civil rights, id. at 4-5; (4) he would lose the right to possess body armor, id. at 5; (5) he would not be able to "engage in an occupation or participate in a volunteer position that require[d him] to work or interact primarily and directly with children under 16 years of age," id.; (6) he may be subject to commitment as a sexually violent person under Wis. Stat. §980, id. at 6; (7) state law would impose reporting requirements related to the commission of a sex offense, id.; and (8) neither his nor the State's sentencing recommendations would bind the court, id. The court advised the petitioner that if he was not a United States citizen, a plea of guilty "may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." Id.

The petitioner confirmed that Attorney Flanagan had discussed with him what the State would have to prove before a jury could find him guilty of the

4

offense and the relevant jury instruction. Id. at 7. He stated that he understood the applicable state law regarding attempted sexual contact:

> THE COURT: Have you talked to your lawyer about what the State would have to prove before you could be found guilty of this offense?
>
> [THE PETITIONER]: Yes, sir.
>
> THE COURT: And did that include going through the jury instruction, second degree sexual assault of a child, sexual—in this case sexual contact? Did you go through that jury instruction with him?
>
> [THE PETITIONER]: Yes, sir.
>
> THE COURT: And as a part of that, do you understand that sexual contact is an intentional touching, in this case attempt to sexually— to—sexually—an attempt to contact intentional touching of, and what are we doing under this circumstance?
>
> MS. KARSHEN: The allegations would be that he attempted to have sexual contact with the juvenile for the purposes of sexual gratification or humiliation. Is that the Court's question?
>
> THE COURT: All right. You know, do you have a statute for what the intimate parts are?
>
> MS. KARSHEN: It's in chapter 948. I know it would be her vagina, her buttocks, or her breasts.
>
> THE COURT: You don't have reference to a specific statute for that, do you?
>
> MS. KARSHEN: . . . Intimate parts is defined in 939.22(19). It means the breast, buttocks, anus, groin, scrotum, penis, vagina, or pubic mound of a human being.
>
> . . .
>
> THE COURT: All right. Do you understand that the—that sexual contact is an intentional touching, or in this case an attempt— attempted intentional touching of the intimate parts, meaning the breast, buttocks, anus, groin, scrotum, penis, vagina, or pubic mound of a human being. The touching may be of that intimate part directly or it may be through clothing. The touching may be done by

5

any body part or by an object, but it must be an intentional touching, and sexual contact also requires that you acted with intent to become sexually aroused or gratified. Do you understand that?

[THE PETITIONER]: Yes.

THE COURT: And do you understand that attempt means that you intended to commit the crime of second degree sexual assault of a child and that you did acts towards the commission of that crime which demonstrate unequivocally under all the circumstances that you had formed the intent and would have committed the crime except for the intervention of another person or some other extraneous factor? Do you understand that?

[THE PETITIONER]: Yes.

THE COURT: And do you understand that the State would specifically have to prove that on or about July 30th of 2014 at 2325 North Eighth Street in the City of Milwaukee, Milwaukee County, Wisconsin, that you attempted to have sexual contact with [the victim], a person who had not attained the age of 16 years?

[THE PETITIONER]: Yes. Yes.

Id. at 6-8.

The petitioner then entered his plea:

THE COURT: What is you[r] plea then to the charge of attempt second degree sexual assault of a child under 16 years of age?

[THE PETITIONER]: Guilty.

THE COURT: What is your plea? Guilty or not guilty?

(There was a discussion off the record between [the petitioner] and his counsel.)

[THE PETITIONER]: Guilty.

Id. at 9-10.

The court asked the petitioner if he had signed his plea questionnaire,

waiver of rights form and addendum. Id. at 10. The petitioner stated that he

6

had signed each form, gone through each form with his lawyer, understood everything on each form, provided all truthful answers, understood all the rights that he was giving up by pleading, entered his plea freely, was satisfied with Attorney Flanagan's representation, understood what the State would have to prove before he could be found guilty, understood what the complaint alleged, and understood the many trial rights he was giving up. Id. at 10-13.

The court asked the petitioner whether he was pleading guilty because he was guilty:

> THE COURT: Are you pleading guilty to this charge because you are guilty?
>
> [THE PETITIONER]: Somewhat. I'm not—some parts.
>
> THE COURT: Well, what parts are you admitting that you did? What the complaint alleges is that [the victim] was sleeping in her mom's house and—
>
> (There was a discussion off the record between [the petitioner] and his counsel.)
>
> THE COURT: —and you were kissing up and down her left arm and neck, that you were leaning across the front end of the bed towards her, she yelled, and you said you don't—don't tell, don't tell, I'll give you money. Other family members woke up and noticed your belt was unbuckled and your pants were undone. That you admitted to family members you did it, but you didn't touch her. Then you crawled out a window, you were followed and detained. What of that is true?
>
> [THE PETITIONER]: I guess I'm guilty.
>
> THE COURT: I'm sorry?
>
> [THE PETITIONER]: I guess I'm guilty, I guess.
>
> THE COURT: Well, that's the question I have for you is are you admitting that you were guilty? Did you attempt to have sexual

7

intercourse—sexual contact with [the victim] on that date in that room?

[THE PETITIONER]: Yes.

Id. at 13-14.

The petitioner said that while in the last twenty-four hours he had taken some medication to treat his schizophrenia, it did not affect his ability to understand what he was doing in court, he understood what was going on in court and he had no questions about what was going on in court. Id. at 14-15. Attorney Flanagan confirmed that he had gone over the plea questionnaire and waiver of rights form, including the jury instructions, with the petitioner. Id. at 15. Attorney Flanagan indicated that he was satisfied that (1) the petitioner understood all the rights he'd be giving up by entering the plea, (2) the petitioner was entering his plea freely, voluntarily and intelligently, (3) the petitioner understood the elements of the offense, the supporting facts and the maximum penalty, and (4) there was an adequate factual basis for the acceptance of the plea. Id. at 15-16.

The court approved the petitioner's jury waiver, finding that the petitioner was entering the plea freely, voluntarily, and intelligently, "with full understanding of the nature of the offense charged, the maximum possible penalties, and all the rights he'[d] be giving up." Id. at 16. Attorney Flanagan stated that the court could "use the facts in the criminal complaint to stand as the factual basis," and the court noted that the petitioner had "already indicated and admitted that clearly" when he stated to the court that he "was

8

in the room and intended to have—attempted to have sexual contact with the victim." Id.

The court continued:

> THE COURT: . . . Court has reviewed that complaint, finds that there is a factual basis for the acceptance of your plea. Based upon your plea of guilty, the Court now finds you guilty of the offense of attempt second degree sexual assault of a child in the form and manner as charged in the information, and I adjudge you convicted as of today's date and order entry of judgment on the record.

Id. at 16-17.

The clerk entered the judgment of conviction the same day. Dkt. No. 22-1 at 2. On January 8, 2015, the court sentenced the petitioner to ten years of initial confinement followed by seven and a half years of extended supervision. Id.

    B.    <u>State Postconviction Proceedings</u>

        1.    *No-merit report*

On February 4, 2016, the petitioner's appellate counsel, Attorney John Breffeilh, filed a no-merit report in the Wisconsin Court of Appeals. Dkt. No. 22-3. Attorney Breffeilh's report addressed two issues: (1) whether the petitioner had grounds to withdraw his guilty plea, and (2) whether the petitioner had grounds for resentencing. Id. at 2. Breffeilh concluded that the petitioner could not withdraw his plea because he had entered it knowingly, intelligently, and voluntarily. Id. at 3-4. Noting that while the Constitution does not require a particular procedure for a court considering a guilty plea, Breffeilh explained that Wisconsin law requires a trial court to "address the defendant personally to determine that the plea 'is made voluntarily with an

9

understanding of the nature of the charge and potential punishment if convicted,' and then, make a sufficient inquiry to ensure that the defendant actually committed the crime." Id. (quoting Wis. Stat. §971.08(1)). He explained that "[a] plea questionnaire, in conjunction with a circuit court's colloquy with the defendant, is competent evidence that a defendant knowingly and voluntarily entered a plea." Id. (citing State v. Moederndorfer, 141 Wis. 2d 823, 827-28 (Wis. Ct. App. 1987)).

Attorney Breffeilh explained that (1) the petitioner "informed the circuit court that he signed, read, and understood a plea questionnaire/waiver of rights form before he entered his plea," id.; (2) "[t]he form included a list of rights that [the petitioner] was waiving, and stated that the maximum penalty for this offense was '20 years prison and/or $50,000 fine,'" and that the petitioner signed the jury instructions for "second-degree sexual assault of a child: sexual contact or intercourse with a person who has not attained the age of 16 years," id. at 4-5; (3) the circuit court had discussed the questionnaire and conducted the colloquy adequately "to ensure that [the petitioner] understood the ramifications of his plea," id. at 5; (4) the circuit court had "confirmed that [the petitioner] understood what the State would recommend at sentencing," "informed [the petitioner] that the maximum possible penalty was 20 years in prison, a fine of $50,000 or both," and "told [the petitioner] that it would not be bound by the recommendations, and could 'impose whatever sentence it thinks appropriate under the circumstances,'" id.; (5) the circuit court had "reviewed the elements of the offense," "confirmed that [the

10

petitioner] personally understood what the State would have to prove before he could be found guilty at trial," "reviewed [the petitioner's] constitutional rights and confirmed that [the petitioner] understood the rights that he was waiving," id.; (6) the petitioner stated that he was pleading guilty because he was guilty, personally admitted his attempted sexual contact with the victim, and stipulated that the facts in the complaint supported his guilty plea, id. at 5-6; and (7) the petitioner "understood the nature of the charge, the rights he was waiving, and the maximum punishment when he entered his plea," id.

Attorney Breffeilh concluded that the petitioner was not entitled to resentencing, reasoning that the circuit court did not abuse its sentencing discretion. Id. at 6. Recalling the court's discussion of the severity of the offense, id. at 6-7, the petitioner's character, id. at 7-8, the need to protect the public, id. at 8, and mitigating factors, id., Breffeilh opined that the court had considered each of the relevant sentencing factors and had provided sufficient reasoning for the sentence under state law, id. at 6. (citing State v. Harris, 119 Wis. 2d 612, 623 (Wis. 1984); State v. Gallion, 270 Wis. 2d 535, 556 (Wis. 2004); McCleary v. State, 49 Wis. 2d 263, 277-82 (Wis. 1971)). While he considered the court's sentence to be a long one, he concluded that it was "responsive to factors and objectives the circuit court discussed at sentencing." Id. (citing Gallion, 270 Wis. 2d at 562; McCleary, 49 Wis. 2d at 276). Attorney Breffeilh reasoned that the sentence was "not harsh or excessive under the law," noting that it was (1) "slightly less than the maximum sentence for a crime that the circuit court considered 'really serious,'" (citing Wis. Stats.

11

§§948.02(2), 939.50(3), 939.32) and (2) not "so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Id.

### 2. *Petitioner's response to the no-merit report*

On April 7, 2016, the petitioner filed a response to Attorney Breffeilh's no-merit report. Dkt. No. 22-4. He argued that "the circuit court lacked subject matter jurisdiction over the criminal complaint, because the criminal complaint failed to allege an offense of attempted second-degree sexual assault as a matter of law." Id. at 5. He asserted that "[n]o-where in the criminal complaint does it allege that [the petitioner] made an attempted to touch the 'private or intimate parts' of [the victim]." Id. at 7-8. The petitioner contended that "the criminal complaint does not allege that [the petitioner] had any 'sexual contact' with [the victim]." Id. at 8. He asserted that "[t]he events described in the criminal complaint did not conform to attempted second-degree sexual assault pursuant to Wis. Stat. §948.02(2) and Wis. Stat. §939.32," and therefore that "the criminal complaint is jurisdictionally defective and must be dismissed." Id. at 9.

The petitioner argued that "trial counsel rendered ineffective assistance when he failed to object and challenge that the criminal complaint did not contain facts that established probable cause the [the petitioner] committed a crime of attempted second-degree sexual assault." Id. at 10. He asserted that the criminal complaint was unconstitutional because it did not contain facts showing his intent to have sexual contact with the victim. Id. at 12, 13 (citing

12

State v. Williams, 47 Wis. 2d. 242, 253 (Wis. 1970)). Conceding that a complaint need not use the language of the relevant criminal statute, the petitioner stressed that a criminal complaint "must still 'contain the essential facts constituting the offense charged'" and describe "why the facts provide probable cause." Id. at 13 (quoting Williams, 47 Wis. 2d at 253). The petitioner concluded that "[h]ad it not been for Trial Counsel Flanagan's errors and erroneous advice, [the petitioner] would not have pled guilty and would have insisted on going to trial." Id. at 14. He asked the Wisconsin Court of Appeals to disregard the no-merit report "because the foregoing issue presented clearly has arguable merit." Id.

The petitioner argued that he should be allowed to withdraw his plea to attempted second-degree sexual assault in violation of Wis. Stat. §§948.02(2) and 939.32 because he did not enter it knowingly, voluntarily and intelligently. Id. The petitioner claimed that (1) he "was totally unaware of the nature and the elements of attempted second-degree sexual assault, Wis. Stat. §948.02(2) and Wis. Stat. §939.32, at the time of his guilty plea," id. at 15; (2) it was "totally unfair of the circuit court to ask" him at the plea hearing whether he was satisfied with trial counsel's performance because "trial counsel representation was not under review at that time as it is now," id.; (3) after the petitioner told Attorney Flanagan that he never intended to have sexual contact with the victim, Attorney Flanagan said he would file a motion to dismiss the charge, but never did so, id.; (4) Attorney Flanagan had the petitioner sign a copy of the jury instruction for sexual assault of a child (Wis. Stat. §948.02(2));

13

when the petitioner's appellate counsel gave him a copy of the signed jury instruction, there were "scratched-out words on it" and someone had handwritten the word "attempted" on it, leading the plaintiff to allege that Attorney Flanagan "must have altered" the copy of the jury instruction after the petitioner had signed it, id. at 15-16; (5) the plea questionnaire indicated that the petitioner was receiving mental health treatment and had had medications within twenty-four hours of his plea; although this "affected [the petitioner's] free will, "no-one thought to follow-up on this with a professional opinion and ask a doctor could the medication affect [the petitioner's] ability to understand, comprehension, sympathetic awareness, etc., either in general or with reference to something specific," id. at 17; (6) the plea questionnaire did not list the elements of attempted second-degree sexual assault of a child and did not define sexual contact, id.; (7) the circuit court did not conform to "the mandatory procedure of Wis. Stat. §971.08(1)" when it took his plea, id. at 17-18; (8) the record at the plea hearing showed that he did not admit to conduct that constituted attempted second-degree sexual assault, id. at 18-19; (9) that the circuit court judge coerced the petitioner into pleading guilty, id. at 19-21; (10) that the petitioner's "comprehension appeared to be low" and that the prosecutor knew it, id. at 21; (11) the victim's parents did not give a victim impact statement and accused him in bad faith, id. at 22; (12) the circuit court erred in using the allegations in the complaint as a factual basis and the State did not carry its burden of proving every element of the offense, id. at 24; (13) trial counsel was ineffective because he failed to advise the petitioner that his

14

conduct did not constitute attempted second-degree sexual assault of a child, id. at 25; and (14) the petitioner would not have pled guilty but for trial counsel's errors, id. at 25-26.

### 3. *Wisconsin Court of Appeals decision*

On November 18, 2016, the Wisconsin Court of Appeals summarily affirmed the petitioner's conviction. Dkt. No. 22-5 at 1-2. After an independent review of "the record, the no-merit report and the response" under Anders, the court concluded that there was "no issue of arguable merit that could be pursued on appeal." Id. (citing Anders v. California, 386 U.S. 738 (1967)). The court found "no arguable basis to allege that [the petitioner's] guilty plea was not knowingly, intelligently, and voluntarily entered." Id. at 5-7.

The court of appeals rejected the petitioner's claim that he did not "admit[] acts that constitute[d] the crime." Id. The court concluded that the record "belie[d]" the petitioner's claim "that he was not attempting to have sexual contact" with the victim, finding the claim "belated" and "contradicted by his responses to the trial court." Id. at 7-9. For example, the court of appeals recalled that the circuit court asked if it could "use the facts in the criminal complaint to stand as the factual basis," that trial counsel agreed, that the trial court believed the petitioner had "already indicated and admitted that clearly in response" and that the petitioner "did not object to this statement or otherwise contradict the trial court." Id. at 8. It noted that the petitioner "did not raise any concerns about his plea with the trial court prior to sentencing, and he did not offer any corrections to the [pre-sentence

investigation] or to his trial counsel's remarks at sentencing, which included trial counsel's statement that [the petitioner] desire[d] sex offender treatment." Id. at 8-9, n.7. Rather, "[i]t was not until nine months after sentencing that [the petitioner] wrote to the trial court to raise concerns about his plea." Id. The court of appeals concluded that the petitioner's "admission in court [was] consistent with the undisputed facts outlined in the complaint;" the court found that those undisputed facts implied that the petitioner intended to have sexual contact with the victim. Id. at 9. Based on its review of the record, the court of appeals concluded that the circuit court adequately had ensured that the plea was knowing, intelligent and voluntary under state law. Id.

The court of appeals determined that the circuit court properly exercised its sentencing discretion. Id. Noting that it addressed the petitioner's character, the gravity of the offense and the need to protect the public, the court of appeals determined that the circuit court had applied and explained the standard sentencing factors under state law. Id. at 10 (citing Gallion, 270 Wis. 2d at 557). The court found no merit to any argument that the sentence was excessive, reasoning that (1) the sentence was less than the maximum and (2) the petitioner's "past history of sexual assault, his inability to control his actions, and his acknowledged need for sex offender treatment all support the trial court's exercise of sentencing discretion." Id. at 10-11.

The court found that (1) the petitioner had "waived his right to challenge the sufficiency of the complaint by not objecting prior to his waiver of the preliminary hearing," and (2) under the applicable standard, the criminal

complaint established probable cause. Id. at 12-13. It rejected the petitioner's argument that his "free will" was affected by the medication he was taking. Id. at 13-14. It recalled the petitioner's statement that no medication affected his ability to understand what he was doing at the plea hearing, and that trial counsel was satisfied that the petitioner "was entering his plea freely, voluntarily, and intelligently." Id. at 14. The court determined that the petitioner's "answers at the plea hearing [did] not suggest that he was impaired." Id.

On February 15, 2017, the Wisconsin Supreme Court denied review. State v. Spivery, Milwaukee County Case No. 14CF003425 (available at https://wcca.wicourts.gov).

C.    Federal *Habeas* Petition

On September 15, 2017, the petitioner filed this federal *habeas* petition, dkt. no. 1, a supporting brief, dkt. no. 2, and an affidavit, dkt. no. 3. On July 24, 2018, the petitioner filed an amended petition, dkt. no. 10, and a supporting brief, dkt. no. 11. The amended petition asserted three grounds for relief: (1) the Milwaukee County Circuit Court lacked subject-matter jurisdiction over the criminal complaint because the complaint failed as a matter of law to allege the offense of attempted second-degree sexual assault, dkt. no. 10 at 3; (2) this court should allow the petitioner to withdraw the guilty plea because it was not knowingly, voluntarily and intelligently entered and Attorney Flanagan was ineffective in giving the petitioner erroneous advice that caused him to plead guilty rather than go to trial, id. at 6; and (3) Attorney

17

Flanagan provided ineffective assistance of counsel by failing to object that the criminal complaint did not contain facts showing probable cause that the petitioner committed the offense of attempted second-degree sexual assault, id. at 11. A week later, this court screened the amended petition under Rule 4 of the Rules Governing Section 2254 Cases and allowed the petitioner to proceed on his ineffective assistance of counsel and due process claims. Dkt. No. 15 at 7.

1.    *Petitioner's amended petition and memorandum of law in support (Dkt. Nos. 10, 11)*

In the memorandum of law supporting the amended petition, the petitioner argues that he should be able to withdraw his guilty plea because he did not enter it knowingly, voluntarily, and intelligently and because he entered the plea due to his trial counsel's ineffective assistance. Dkt. Nos. 10 at 2, 11 at 5. He says that (1) he "was totally unaware of the nature and elements of attempted second-degree sexual assault at the time of his guilty plea," dkt. no. 10 at 6; (2) it was "totally unfair of the circuit court to ask" the petitioner whether he was satisfied with trial counsel's performance "because trial counsel representation was not under review at that time," id.; (3) Attorney Flanagan failed to file a motion to dismiss the complaint, id.; (4) Attorney Flanagan must have altered the jury instruction that the petitioner had signed after the petitioner had signed it, id.; (5) he was "totally unaware of what the elements were to attempted second-degree sexual assault . . . during his trial court proceedings," id. at 7; (6) the plea questionnaire and waiver of rights form reflected that he had taken "alcohol, medication, or drugs within the last 24

18

hours of his plea," which "affected [his] free will;" however, "no-one thought to follow-up on this with a professional opinion and ask a doctor could the medication affect [the petitioner's] ability to understand, comprehension, sympathetic awareness, etc., either in general or with reference to something specific," id.; (7) the plea questionnaire and waiver of rights form did not list the elements of the offense, id.; (8) he did not plead guilty to facts that constituted attempted second-degree sexual assault, id. at 7-8; (9) Attorney Flanagan coerced him to "go along with the circuit court," id. at 8; (10) the circuit court coerced his plea, id. at 9; (11) no facts in the complaint established that he "attempted to have sex with [the victim]," id.; (12) and Attorney Flanagan was not "skilled and versed" in the criminal law, id. at 10. The brief is in some respects identical to the brief the petitioner filed in the Wisconsin Court of Appeals in opposition to the no-merit brief filed by Attorney Breffeilh.

The petitioner argues that Attorney Flanagan rendered ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984) when he failed to "object and challenge" the criminal complaint. Id. at 11; Dkt. No. 11 at 7-8. He asserts that Attorney Flanagan failed to object to the complaint for its lack of facts showing probable cause that the petitioner committed attempted-second degree sexual assault. Dkt. No. 10 at 11. He concludes that "because the criminal complaint on its face clearly shows no facts . . . describing" the petitioner's intent to have sexual contact with the victim, (1) Attorney Flanagan "clearly showed that he was not 'skilled and

versed' in the criminal law," and (2) the complaint was unconstitutional. Id. at 12.

### 2.   *Respondent's answer (Dkt. No. 22)*

On October 19, 2020, the respondent answered the petition. Dkt. No. 22. In her answer, the respondent argues that the petitioner procedurally defaulted the claim "that [his] trial counsel was ineffective because counsel allegedly did not review or identify the elements of attempted second-degree sexual assault of a child." Id. at 5. The respondent reasons that the petitioner "did not raise it before the Wisconsin appellate courts." Id. at 5. In the alternative, the respondent contends that the court should deny relief because the Wisconsin Court of Appeals (1) did not unreasonably apply federal law as determined by the United States Supreme Court and (2) did not unreasonably interpret the facts in light of the evidence presented. Id. at 7 (citing 28 U.S.C. §2254(d)). Regarding the petitioner's ineffective assistance of counsel claim, the respondent asserts that the Wisconsin Court of Appeals did not unreasonably apply federal law as determined by the United States Supreme Court and did not unreasonably interpret the facts in light of the evidence presented. Id. at 7 (citing 28 U.S.C. §2254(d)).

### 3.   *Petitioner's reply to respondent's answer (Dkt. No. 23)*

On October 28, 2020, the petitioner filed a "REPLY TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS." Dkt. No. 23. The petitioner argues that his claims are not procedurally defaulted, and asserts that if they are, cause and prejudice excuse any default. Id. at 2. He disputes

20

all of the respondent's arguments and repeats his request that the court appoint a lawyer to represent him, asserting that appointment of counsel is necessary to avoid a "miscarriage of justice." Id. at 6.

4.    *Respondent's brief in opposition to the writ (Dkt. No. 25)*

On January 13, 2021, the respondent filed a brief in opposition to the amended petition. Dkt. No. 25. The respondent contends that the Wisconsin Court of Appeals reasonably rejected the petitioner's claims. Id. at 17. Noting the petitioner's claim that Attorney Flanagan performed ineffectively by failing to explain the "nature and the elements of attempted second-degree assault at the time of [the petitioner's] guilty plea," the respondent says the claim is meritless. Id. at 17-18. She concludes that, "[a]s the Wisconsin Court of Appeals recognized, [the petitioner] was informed of the elements of *attempted* second-degree sexual assault and admitted to acts which satisfied the elements of that offense, and there was no basis for [the petitioner's] trial counsel to object during [the petitioner's] plea colloquy." Id. at 18. The respondent asserts that Attorney Flanagan "attached the jury instructions for 'completed' instead of attempted second-degree sexual assault;" she stresses, however, that while "the court of appeals was aware of this," it found that the petitioner's colloquy "demonstrated that [the petitioner] was aware of the elements underlying his guilty plea." Id.

According to the respondent, "the circuit court's colloquy with [the petitioner] soundly defeats any claim that [the petitioner] did not understand exactly what he was doing when he entered his guilty plea." Id. Stating that

21

"the Wisconsin Court of Appeals properly took all of this information into account in rejecting [the petitioner's] plea withdrawal (and companion ineffective-assistance-of-counsel claim based on the same)," the respondent concludes that "the court reasonably applied clearly established federal law to reject" the claim. Id. She stresses the court of appeals' observation that "in taking [the petitioner's] guilty plea, the circuit court 'talked with [the petitioner] at length about what the State would have to prove.'" Id. at 19. After recounting the particulars of the colloquy, the respondent reiterates that the petitioner "confirmed that he understood the elements," "did not ask the trial court for clarification or express hesitation," and replied affirmatively when the circuit court asked if the petitioner "attempt[ed] to have sexual intercourse—sexual contact with [the victim] on that date in that room." Id. at 20. The respondent concludes that the court's colloquy reveals that "there was no basis for [the petitioner's] trial counsel to have argued that [the petitioner's] plea was not knowing, intelligent, and voluntary," and that therefore, "[the petitioner's] attorney could not have performed deficiently." Id.

The respondent argues the petitioner also "failed to demonstrate prejudice," reasoning that the petitioner (1) "does not make an argument that there is a reasonable probability he would not have pled guilty and would have insisted on going to trial but for counsel's deficient performance," id. (citing Lee v. United States, __ U.S. ___, 137 S. Ct. 1958, 1965 (2017); Hill v. Lockhart, 474 U.S. 52, 59 (1985)); and (2) "has not presented any evidence, let alone any *objective evidence*, that there was a reasonable probability he would have gone

22

to trial but for counsel's error," id. (citing Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011)). Concluding that Attorney Flanagan could not have performed ineffectively for not arguing that a "kiss is not sexual contact," the respondent contends that the petitioner again has conflated completed and attempted sexual assault and has ignored his own contrary statements and admissions during the plea colloquy. Id. at 21-22. The respondent asserts that the plea colloquy transcript similarly undermines any claim "that [the petitioner's] mental health prevented him from understanding what he was doing at the plea hearing." Id. at 22.

The respondent contends that Attorney Flanagan's failure to challenge the criminal complaint did not constitute ineffective assistance of counsel. Id. at 23. As the respondent understands the petitioner's argument, it "again hinges on his claim that, because he only kissed the victim's neck and arm with his pants unbuckled before the victim awoke, screamed, and woke up her family, the criminal complaint did not 'recite probable cause that [the petitioner] . . . committed an offense of attempted second-degree sexual assault pursuant to the law.'" Id. at 24. The respondent concludes that the argument is "without merit for two reasons;" she states that (1) the petitioner "expressly agreed to waive any argument he had about the sufficiency of the complaint," id. at 24; and (2) in Wisconsin, a criminal complaint "need 'not contain all the factual allegations that are necessary for a conviction of the offense,'" id. at 24-25 (citing State ex rel. Cullen v. Ceci, 45 Wis. 2d 432, 442 (Wis. 1970)). The respondent says that the criminal complaint plainly met the applicable

23

standard, reasoning that it had enough information to allow the reviewing judge to determine whether charges were capricious and "sufficiently supported to justify bringing into play the further steps of the criminal process." Id. at 25.

5. *Petitioner's "traverse in support of the writ of habeas corpus" (Dkt. No. 26)*

The petitioner filed a document he called "Traverse in Support of the Writ of Habeas Corpus;" dkt. no. 26; the court interprets this as his reply brief. The petitioner reiterated that his conduct did not satisfy the elements of attempted second-degree sexual assault, dkt. No. 26 at 4-7, and that the circuit court's plea colloquy was inadequate, id. at 8-12; he also argued that this court should conduct a competency hearing, conduct a competency evaluation and appoint counsel for that purpose, id. at 12-14.

## II. Motion Requesting the Appointment of an Attorney (Dkt. No. 18)

The petitioner asked the court to appoint an attorney to litigate his federal *habeas* petition. Dkt. No. 18. He stated that another incarcerated person had helped him prepare and file his petition, that "[t]he prisoner who assisted him is no longer available to help" and that he "knows nothing about the law and the procedures." Id. The petitioner attached to his motion two letters that he sent to separate attorneys requesting their representation. Dkt. No. 18-1.

The court did not promptly rule on the petitioner's motion. Without a lawyer, the petitioner filed his reply brief to the respondent's answer to the petition and a reply brief in support of his petition.

24

There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. Giles v. Godinez, 914 F.3d 1040, 1052 (7th Cir. 2019). This is particularly true in *habeas* cases. The Seventh Circuit has held that "[a] litigant is not entitled to appointed counsel in a federal postconviction proceeding," although it notes that a district court "may appoint counsel if 'the interests of justice so require.'" Taylor v. Knight, 223 F. App'x 503, 504 (7th Cir. 2007) (citations omitted) (quoting 18 U.S.C. §3006A(a)(2)(B)).

When evaluating a motion to appoint counsel, the district court engages in a two-step process. Giles, 914 F.3d at 1052. First, the court determines whether the plaintiff "made a reasonable attempt to secure counsel on his own." Id. at 1053 (citing Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013)). Second, the court determines "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a lay person to coherently present it." Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007).

The petitioner has demonstrated that at least twice, he tried to find a lawyer on his own; that satisfies the first requirement. But on this record, the court cannot find that the difficulty of the case factually or legally exceeded the petitioner's capacity as a lay person to coherently present it. Every pleading the court received from the petitioner was lengthy and detailed. His pleadings—including the two he filed after he asked the court to appoint him a lawyer—contained extensive citations to the record and to case law and statutes. While it appears that the petitioner may have copied some arguments from his opposition to the no-merit brief, that does not demonstrate that he could not

25

adequately represent himself; those arguments were extensive. The petitioner has presented more than enough for the court to understand why he believes that he is entitled to *habeas* relief and to be able to evaluate his arguments.

The court will deny the motion.

### III.    Motion for Extension of Time to File Brief (Dkt. No. 24)

On December 4, 2020, the respondent filed a motion for an extension of time to file a brief in opposition to the petition. Dkt. No. 24. Before the court ruled on that motion—which it would have granted—the respondent filed a brief in opposition. Dkt. No. 25. The court will grant the motion *nunc pro tunc* to December 4, 2020. The court deems the respondent's brief (Dkt. No. 25) timely filed.

### IV.    Analysis

#### A.    Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

26

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). Indeed, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

  B. The Petitioner's Claim that the Circuit Court Lacked Subject Matter Jurisdiction Because the Complaint Failed to Allege Attempted Second-Degree Sexual Assault

  In his opposition to the no-merit brief, the petitioner made the identical argument to the Wisconsin Court of Appeals that he makes to this court: that "the circuit court lacked subject matter jurisdiction over the criminal complaint, because the criminal complaint failed to allege an offense of attempted second-degree sexual assault as a matter of law." Dkt. No. 22-4. at 5. The Wisconsin Court of Appeals did not mention "subject matter jurisdiction" in its decision. The federal *habeas* statute's "deferential standard of review applies only to claims that were actually 'adjudicated on the merits in

Case 2:17-cv-01256-PP Filed 09/26/22 Page 27 of 47 Document 28

State court proceedings.'" Harris v. Thompson, 698 F.3d 609, 623 (7th Cir. 2012) (citing 28 U.S.C. §2254(d)). "Where the state courts did not reach a federal constitutional issue, 'the claim is reviewed *de novo.*'" Id. (quoting Cone v. Bell, 556 U.S. 449, 472 (2009)). "When no state court has squarely addressed the merits of a habeas claim," the federal court reviews the claim "'under the pre-AEDPA standard of 28 U.S.C. § 2243, under which [the federal court] "dispose[s] of the matter as law and justice require."'" Id. (quoting Toliver v. Pollard, 688 F.3d 853, 859 (7th Cir. 2012)). Because the Court of Appeals did not address the petitioner's subject matter jurisdiction argument, then, this court must consider it *de novo*, and must dispose of it as law and justice require.

"Criminal subject-matter jurisdiction is the 'power of the court to inquire into the charged crime, to apply the applicable law and to declare the punishment." State v. Aniton, 183 Wis. 2d 125, 129 (Wis. Ct. App. 1994) (quoting Mack v. State, 93 Wis. 2d 287, 293 (Wis. 1980). Under Wisconsin law,

> [a] trial court's criminal subject matter jurisdiction "attaches when the complaint is filed." *See State v. Aniton*, 183 Wis.2d 125, 129 . . . (Ct. App. 1994). "The [trial] court lacks criminal subject-matter jurisdiction only where the complaint does not charge an offense known to law." *Id.* A party challenging the court's subject matter jurisdiction has the burden to prove its nonexistence. *See State ex rel. R.G. v. W.M.B.*, 159 Wis.2d 662, 668 . . . (Ct. App. 1990).

State v. Simpson, No. 2019AP1713, 2020 WL 13358144, at *2 (Wis. Ct. App. Dec. 22, 2020).

The complaint filed against the petitioner in Milwaukee County Circuit Court on August 14, 2014 charged an offense known to law. It charged the

petitioner with "attempted second degree sexual assault of a child (<16 years of age)," in violation of Wis. Stat. §§948.02(2), 939.50(3)(c) and 939.32. Dkt. No. 22-2. This crime is "known to law"—Wis. Stat. §948.02(2) was passed by the Wisconsin legislature; it says that whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony. The trial court had subject matter jurisdiction and the petitioner is not entitled to *habeas* relief on this ground.[3]

C. The Petitioner's Claim that This Court Should Allow him to Withdraw the Guilty Plea Because It Was Not Knowingly, Voluntarily and Intelligently Entered and Attorney Flanagan Was Ineffective in Giving Him Erroneous Advice that Caused Him to Plead Guilty Rather Than Go to Trial

The Wisconsin Court of Appeals found "no arguable basis to allege that [the petitioner's] guilty plea was not knowingly, intelligently, and voluntarily entered." Dkt. No. 22-5 at 5 (citing Wis. Stat. §971.08; State v. Bangert, 131 Wis. 2d 246, 260-72 (Wis. 1986)). The court recounted that (1) the petitioner "completed a plea questionnaire and waiver of rights form, which the trial court referenced during the plea hearing," id. (citing Moederndorfer, 141 Wis. 2d at 827-28); and (2) "[t]he trial court conducted a thorough plea colloquy that

_____

[3] In his opposition to the no-merit brief, the petitioner asserted that that the complaint was defective because "[t]he events described in the criminal complaint did not conform to attempted second-degree sexual assault pursuant to Wis. Stat. § 948.02(2) and Wis. Stat. § 939.32." Dkt. No. 22-4 at 9. Under Wisconsin law, the standard for determining whether a court has subject matter jurisdiction over a criminal case is not whether the events in the complaint conform to the charge it alleges; that is a question for a jury. The standard is whether the complaint charged an offense known to law, and the complaint in this case did.

29

addressed [the petitioner's] understanding of the plea agreement and the charge to which he was pleading guilty, the penalties he faced, and the constitutional rights he was waiving by entering his plea," id. (citing Wis. Stat. §971.08; State v. Hampton, 274 Wis. 2d 379, 399 (Wis. 2004); Bangert, 131 Wis. 2d at 266-72). The court of appeals concluded that the trial court (1) "confirmed with [the petitioner] that he knew the trial court was 'not bound to accept the recommendation of either [the petitioner's] attorney or the district attorney' and could 'impose whatever sentence it [thought] appropriate,'" (2) "stated the maximum term of imprisonment that could be imposed," (3) "discussed with [the petitioner] the constitutional rights [he] was waiving," and (4) "discussed with [the petitioner] the fact that he would have to register as a sex offender and could be subject to a Wis. Stat. ch. 980 commitment," Id.

The court of appeals was "not persuaded that [the petitioner] ha[d] identified an issue of arguable merit with respect to his knowledge of the elements of the crime." Id. at 6. While the court of appeals conceded that trial counsel did not include the attempted second-degree sexual assault jury instruction as an attachment to the plea questionnaire, it clarified that the circuit court "did not simply rely on the attachment in assessing whether [the petitioner] understood the elements of the crime." Id. The court of appeals recalled that the circuit court also (1) "talked with [the petitioner] at length about what the State would have to prove," id. at 6-7; (2) "read the definition of sexual contact found in WIS JI—CRIMINAL 2101A," id. at 7; (3) "explicitly confirmed with [the petitioner] that he knew the State would be required to

prove [the petitioner] 'attempted to have sexual contact with [the victim], a person who had not attained the age of 16 years,' which are the first two elements of the crime identified in WIS JI—CRIMINAL 2105A," id.; and (4) "went over the third element of the crime identified in WIS JI—CRIMINAL 2105A, explicitly asking [the petitioner] if he understood that the crime of attempted second-degree sexual assault requires that he 'did acts toward the commission of that crime which demonstrate unequivocally under all the circumstances that you had formed the intent and would have committed the crime except for the intervention of another person or some other extraneous factor," id. The court of appeals noted that "[e]ach time he responded to the trial court's questions, [the petitioner] confirmed that he understood the elements, and he did not ask the trial court for clarification or express hesitation." Id.

In his amended federal *habeas* petition and supporting brief, the petitioner has not argued that the Wisconsin Court of Appeals unreasonably applied federal law as determined by the United States Supreme Court. He has not argued that the court of appeals based its decision on an unreasonable determination of the facts in light of the evidence presented. Instead, he raised the same arguments that he raised to the court of appeals. The court understands that the petitioner disagrees with the conclusions in the court of appeals' decision. Those disagreements, however, are not a basis for *habeas* relief.

Even if the petitioner intended to argue that the court of appeals unreasonably applied federal law or based its decision on an unreasonable determination of the facts, the court would deny relief. In Wisconsin, "[a] plea not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." State v. Cross, 326 Wis. 2d 492, 502 (Wis. 2010) (citing State v. Brown, 293 Wis. 2d 594, 611 (Wis. 2006)). Wis. Stat. §971.08(1) provides:

> Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).

"[T]he Wisconsin standard that a plea must be knowingly, intelligently, and voluntarily entered is the same as the constitutional due process standard." Warren v. Baenen, 712 F.3d 1090, 1102 (7th Cir. 2013). "A guilty plea must be voluntary and intelligent." Virsnieks v. Smith, 521 F.3d 707, 714 (7th Cir. 2008) (citing Parke v. Raley, 506 U.S. 20, 29 (1992)). To enter a plea voluntarily and intelligently, a defendant must (1) "have full awareness of the

32

plea's 'direct consequences,'" id. (quoting <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970)); (2) have "real notice of the true nature of the charge against him," id. (quoting <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 (1976)); and (3) "understand 'the law in relation to the facts,'" id. (quoting <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969)). A court determines whether a criminal defendant entered a plea knowingly and voluntarily from "all of the relevant circumstances surrounding it." Id. (quoting <u>Brady</u>, 397 U.S. at 749).

The Wisconsin Court of Appeals reasonably rejected the petitioner's arguments. The circuit court conducted an extensive plea colloquy under state law mirroring the constitutional due process standard. Dkt. No. 22-8; <u>Baenen</u>, 712 F.3d at 1102. The court confirmed that the petitioner understood the consequences of a guilty plea, id. at 4-6, the nature of attempted second-degree sexual assault, id. at 7-9, and how the relevant laws related to the facts of his case, id. at 9. The petitioner's responses to the court's questions indicated that he understood his decision to enter a guilty plea, what the State would have to prove at trial, what the maximum penalties were and the rights he was waiving. Id. at 4-14. The petitioner agreed that the facts in the complaint were true and sufficient to show his guilt as to the underlying offense. Id. at 13-14. In its decision affirming the petitioner's conviction, the Wisconsin Court of Appeals adequately considered and discussed the circuit court's plea hearing. In concluding that there was no merit to the petitioner's claim that his plea was not entered knowingly, voluntarily and intelligently, the court of appeals did

33

not unreasonably apply any applicable United States Supreme Court precedent and did not base its decision on an unreasonable determination of the facts.

In the opposition brief to the no-merit report, the petitioner argued that the record shows that he did not admit facts that would support a charge of attempted second-degree sexual assault. He argued that he admitted only that he kissed the victim's arm and neck, and claimed that his belt was unbuckled and his pants undone because he had just come from using the bathroom. Dkt. No. 22-4 at 19. He argued that he did not intend to have sex with the victim and that he did not attempt to have any contact with the victim's private parts. Id. The petitioner also argued that due process prohibits conviction of a person without proof beyond a reasonable doubt as to every "fact necessary to constitute the crime with which he is charged." Id. at 22. He asserted that "where the State failed to meet its burden as to **every element of the charged** crime, the accused cannot be convicted of that crime, even if he or she pleads guilty." Id. at 23 (citing State v. Johnson, 207 Wis. 2d 239 (Wis. 1997)). In federal court, the petitioner has focused on the second part of that argument, asserting that "the accused cannot be convicted of [a] crime, even if he or she pleads guilty," where "the State failed to meet its burden as to **every element of the charged crime**." Dkt. No. 11 at 5-6.

The Wisconsin Court of Appeals addressed the first part of the argument—that the plea colloquy shows that the plaintiff did not admit facts that would support a charge of attempted second-degree sexual assault. The court addressed the fact that when first asked if he was pleading guilty

34

because he was guilty, the petitioner responded equivocally, stating "Somewhat. I'm not—Some parts." Dkt. No. 22-5 at 7-8. Noting that an off-the-record conversation between the petitioner and has attorney followed, the court then recounted that the trial court read to the petitioner from the complaint, asking him what portions were true. Id. at 8. In response, the petitioner said, "I guess I'm guilty." Id. The trial court clarified further, asking whether the petitioner was admitting that he was guilty and whether the petitioner "attempt[ed] to have sexual intercourse—sexual contact with [the victim] on that date in that room?" Id. The appellate court noted that the petitioner answered, "Yes." Id. The appellate court concluded:

> Having reviewed the guilty plea hearing transcript, we are not convinced that [the petitioner] has identified an issue of arguable merit in his response. His belated claim that he did not intend to have sexual contact with the victim is contradicted by his responses to the trial court. Moreover, his admission in court is consistent with the undisputed facts outlined in the complaint. [The petitioner] approached the sleeping child with his pants undone and belt unbuckled, leaned over the bed, kissed her arm and neck, and then, when she woke up and screamed, he immediately offered her money to induce her not to tell anyone. Those facts imply that [the petitioner] intended to have sexual contact with the child and, but for her waking up, screaming, and running away, [the petitioner] would have done so.

Id. at 9. This conclusion does not constitute an unreasonable applicable of United States Supreme Court precedent or an unreasonable determination of the facts.

The appellate court did not directly address the second part of the petitioner's argument—that a person cannot be convicted of a crime if the State has not proved every element of that crime beyond a reasonable doubt, even

35

where the defendant has pled guilty. The case the petitioner cites in support of that proposition, <u>State v. Johnson</u>, involved different procedural circumstances than the petitioner's. Johnson pled guilty to armed robbery and attempted armed robbery. <u>State v. Johnson</u>, 207 Wis. 2d at 243. After he was sentenced, Johnson filed a postconviction motion to withdraw the guilty plea, alleging that there was no factual basis for one of the elements of the offense. <u>Id.</u> The Wisconsin Supreme Court explained:

> A postconviction motion for the withdrawal of a guilty plea is only granted when necessary to correct a manifest injustice. *State v. Harrell*, 182 Wis.2d 408, 414 . . . (Ct. App. 1994). One type of manifest injustice is the failure to establish a sufficient factual basis that the defendant committed the offense to which he or she pleads. *State v. Smith*, 202 Wis.2d 21, 25 . . . (1996). The circuit court's decision regarding the withdrawal of a guilty plea is discretionary and will not be upset on review unless there has been an erroneous exercise of discretion. *Harrell*, 182 Wis.2d at 414 . . . . Failure by the circuit court judge to ascertain that "the defendant in fact committed the crime charged" is an erroneous exercise of discretion. *Smith*, 202 Wis.2d at 25 . . . . Johnson has the burden of showing by clear and convincing evidence that withdrawal of his plea is necessary to correct a manifest injustice. *Harrell*, 182 Wis.2d at 414 . . .

<u>Id.</u> at 244.

Johnson argued that his conviction for armed robbery of an automobile was invalid because the facts did not demonstrate that the car he was alleged to have stolen ever moved. <u>Id.</u> at 245. The State argued that "asportation"—movement—was not a necessary element of the offense. <u>Id.</u> The Wisconsin Supreme Court indicated that the appeal presented a single issue: "whether a person may be convicted of armed robbery when the property at issue is an automobile and the person does not move the automobile." <u>Id.</u> It concluded

36

that "asportation"—movement—*was* an element of armed robbery of an automobile. Id. Because there was no factual basis showing that the automobile had moved, the appellate court—and the Wisconsin Supreme Court—concluded that "Johnson has established by clear and convincing evidence that the plea withdrawal is 'necessary to correct a manifest injustice.'" Id. at 248. The Supreme Court said, "We agree with the court of appeals that where, as here, the State fails to meet its burden as to every element of the charged crime, the accused cannot be convicted of that crime, even if he or she pleads guilty." Id.

Unlike Johnson, the petitioner never filed a postconviction motion to withdraw his guilty plea. See State v. Spivery, Case No. 2014CF003425 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). He did not give the circuit court or the court of appeals the opportunity to determine whether a manifest injustice had occurred, or to determine whether he could prove by clear and convincing evidence that his plea withdrawal was necessary to correct such an injustice. When a person incarcerated under a state sentence fails to "first present[] [a] claim to the state court in accordance with state procedures," he has "procedurally defaulted" on that claim and a federal *habeas* court may not consider it unless the petitioner has demonstrated cause for and prejudice resulting from the failure. Shinn v. Ramirez, ___ U.S. ___, 142 S. Ct. 1718, 1727 (2022).

Even if the petitioner had filed a motion to withdraw his guilty plea and it had been denied, the record does not support his claim that there was "no

factual basis to support a finding that [his] intent was to have sexual contact or intercourse with [the victim] nor he attempted to have sexual contact or intercourse with [the victim]." Dkt. No. 22-4 at 24. The petitioner is correct that to prove attempted second-degree sexual assault of a child, the State must prove that he had "intent to have sexual (contact) (intercourse)" with a person under the age of sixteen. Wis. JI-Criminal 2105A (2005).[4] The State also must prove that the petitioner committed "acts toward the commission of that crime that demonstrate unequivocally, under all of the circumstances, that he or she had formed that intent and would commit the crime except for the intervention of another person or some extraneous factor." Id. Wis. Stat. §948.01(5)(1) defines sexual contact as, among other things, intentional touching of the victim's intimate parts, whether directly or through clothing, "if that intentional touching is for the purpose of sexually degrading or sexually humiliating the [victim] or sexually arousing or gratifying the defendant."

---

[4] In his opposition to the no-merit brief, the petitioner argued that the jury instruction attached to his guilty plea questionnaire was the instruction for a *completed* act of second-degree sexual assault of a child—Wis JI—Criminal 2104—rather than the instruction for *attempted* second-degree sexual assault of a child—Wis JI—Criminal 2105A. Dkt. No. 22-4 at 15-16. The Wisconsin Court of Appeals noted that in two places on the erroneous jury instruction, someone had handwritten "attempted," but that the petitioner claimed that handwritten notation was not on the instruction when he reviewed and signed it. Dkt. No. 22-5 at 6. The Court of Appeals inferred from the petitioner's identification of this error that he was trying to argue that because his lawyer showed him the wrong jury instruction, his plea was not knowing and voluntary. Id. The court found it "unfortunate" that counsel had showed the petitioner the wrong instruction, but correctly observed that the trial court did not rely on that instruction alone to ensure that the petitioner understood the elements of the offense—it discussed the elements with him in detail. Id. at 6-7.

38

The complaint alleged that the petitioner was leaning over the victim's bed with his belt unbuckled and his pants undone, kissing the victim. When she awoke and started yelling, the petitioner said, "don't tell don't tell—I'll give you money." He made a statement to family members that he "did it" but did not touch the victim (a false statement, given that his kissing her was what woke the victim), and he then tried to flee out the window before he was detained by family members. The fact that the petitioner was kissing the victim while she was asleep, the fact that he had his belt unbuckled and his pants undone, the fact that he begged her not to tell and offered to pay her, the fact that he denied to the victim's family that he'd touched the victim, the fact that he tried to flee, the fact that he later told police he had an earlier conviction for sexual assault and did not get the help he needed in prison—all of this is circumstantial evidence of intent. "Circumstantial evidence is evidence from which a jury may logically find other facts according to common knowledge and experience," and both circumstantial and direct evidence "can prove a fact." Wis. JI-Criminal 170 (2000). While it is up to the jury to decide whether activity such as lying about conduct or flight shows consciousness of guilt or actual guilt, Wis. JI-Criminal 172 (2000), the complaint contained sufficient circumstantial evidence from which a jury could find that the petitioner intended to sexually assault the victim and was interrupted before he could do so. And, as the court of appeals discussed, the petitioner admitted at the plea colloquy that that was what he had intended.

Finally, the petitioner argued in his opposition to the no-merit brief that he pled guilty only because he received ineffective advice from his trial counsel, dkt. no. 22-4 at 25-26, and he implied as much in his statement of the second issue in his memorandum in support of *habeas* relief, dkt. no. 11 at 5. To prove a claim of ineffective assistance of counsel, a client first must "identify the acts or omissions of counsel that are alleged not to have been the result of professional judgment." Strickland, 466 U.S. at 690. Then he must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistances." Id. The petitioner has not met either of these requirements. He has not identified the advice his attorney allegedly gave him. In his opposition to the no-merit brief, the petitioner inferred that because he and his counsel had an off-the-record conversation after the petitioner first told the court that he was guilty of "some parts" of the charged conduct, his attorney must have used that off-the-record conversation to tell him what to say. Dkt. No. 22-4 at 25-26. The petitioner does not explain, however, what his lawyer told him during that off-the-record conversation, or what advice his lawyer allegedly gave him that was incorrect or erroneous. Nor has he demonstrated how that advice would have been "outside the wide range of professionally competent assistance." Perhaps the petitioner's trial lawyer told him, "Look, you have to tell the judge the truth. Things will only be worse if you don't." That would not have been bad advice and would not have been outside the wide range of professionally competent assistance. Because the petitioner has not identified any erroneous or deficient advice

40

given to him by his attorney, he has not demonstrated that bad advice is what led him to plead guilty.

The petitioner is not entitled to *habeas* relief on his second claim.

D. The Petitioner's Claim that Attorney Flanagan Provided Ineffective Assistance of Counsel by Failing to Object that the Criminal Complaint Did Not Contain Facts Showing Probable Cause that the Petitioner Committed the Offense of Attempted Second-Degree Sexual Assault

When the court of appeals rejected the petitioner's argument that his trial counsel performed ineffectively by failing to object to a legally deficient criminal complaint, it clarified that the petitioner "waived his right to challenge the sufficiency of the complaint by not objecting prior to his waiver of the preliminary hearing." Dkt. No. 22-5 at 12 (citing Wis. Stat. §971.31(5)(c)). The court observed that the petitioner "signed an addendum to the guilty plea questionnaire that stated: 'I understand that by pleading guilty I am giving up my right to challenge the sufficiency of the complaint.'" Id. The court further found that the complaint alleged facts supporting probable cause, noting that

> the complaint alleged that [the petitioner] approached the sleeping child with his pants undone and belt unbuckled, leaned over the bed, kissed the victim's arm and neck, and then, when she woke up and screamed, [the petitioner] immediately offered her money so she would not tell anyone. After being confronted by family members, he fled the home. He subsequently told the police that he had a prior conviction for sexual assault and "did not get the help he needed in prison." One can infer from those facts and statements that [the petitioner] "did acts which demonstrate unequivocally, under all of the circumstances, that [the petitioner] intended to and would have had sexual [contact with the victim] … except for the intervention of another person or some other extraneous factor."

Id. at 13. "For these reasons," the court found no merit to a motion or appeal based on the criminal complaint. Id.

41

In federal court, the petitioner has not argued that the Wisconsin Court of Appeals unreasonably applied federal law as determined by the United States Supreme Court or based its decision on an unreasonable determination of the facts in light of the evidence presented. Instead, he raises the same arguments that he raised to the Wisconsin Court of Appeals. Again, his disagreement with the court of appeals' reasoning is not a basis for *habeas* relief.

Nor has the petitioner addressed the court of appeals' conclusion that he waived his objections to the sufficiency of the complaint. Under Wisconsin law, "[i]n felony actions, objections based on the insufficiency of the complaint shall be made prior to the preliminary examination or waiver thereof or be deemed waived." Wis. Stat. §971.31(5)(c). The petitioner received the complaint on August 5, 2014. He appeared on August 15, 2014—ten days later—and waived his preliminary hearing. State v. Spivery, Case No. 2014CF003425 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). There is no indication that prior to waiving his preliminary hearing, the plaintiff objected to the sufficiency of the complaint. The court of appeals did not make an unreasonable determination of the facts in concluding that the petitioner had waived this argument.

Perhaps the petitioner intended to argue that his trial attorney was ineffective because he failed to object to the sufficiency of the complaint before the preliminary hearing (Attorney Flanagan was representing the petitioner at that stage). As the court has noted, to prevail on a claim that trial counsel was

42

ineffective, a petitioner must show that (1) his trial counsel's performance fell below objective standards for reasonably effective representation and (2) this deficiency prejudiced the petitioner's defense. Strickland, 466 U.S. at 688-94; United States v. Jones, 635 F.3d 909, 915 (7th Cir. 2011). The first prong of the Strickland test requires a petitioner to identify specific acts or omissions of trial counsel; the court then considers whether, in light of all of the circumstances, trial counsel's performance fell outside the range of "professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (citing Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003)). The prejudice prong requires a petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The petitioner argued that his trial counsel rendered constitutionally ineffective assistance when he failed to object to a complaint that lacked "facts that established probable cause that [the petitioner] committed . . . attempted second-degree sexual assault." Dkt. No. 10 at 11. Wis. Stat. §968.01 provides that a criminal complaint is "a written statement of the essential facts constituting the offense charged. A person may make a complaint on information and belief." "For a complaint to pass constitutional muster, it 'must contain the essential facts constituting the offense charged.'" State v. Travis, 340 Wis. 2d 639, 649 (Wis. Ct. App. 2012) (quoting Williams, 47 Wis. at 253) (some quotation omitted). "It is not enough to list only the language of the criminal statue the defendant allegedly violated." Id. (citing Williams, 47 Wis.

43

2d at 253). A complaint must contain facts "which are themselves sufficient or give rise to reasonable inferences which are sufficient to establish probable cause." State ex rel. Evanow v. Seraphim, 40 Wis. 2d 223, 226 (Wis. 1968). However, a complaint "need not contain all the factual allegations that are necessary for a conviction of the offense." State v. Wealti, 321 Wis. 2d 241 (Table) (Wis. Ct. App. 2009) (citing Ceci, 45 Wis. 2d at 442).

The criminal complaint charged the petitioner with attempted second-degree sexual assault of a child under sixteen years old in violation of Wis. Stat. §§948.02(2), 939.50(3)(c), and 939.32. Dkt. No. 22-2. Section 948.02(2) provides that "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of" second-degree sexual assault of a child. Section 939.32 imposes penalties for an attempt to commit a felony or a crime. The statute clarifies that

> [a]n attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

Wis. Stat. §939.32(3). Section 939.50 prescribes the penalties for the various classes of felonies in Wisconsin.

The complaint alleged that the victim's date of birth was September 9, 1999, dkt. no. 22-2; as of the date of the offense (July 30, 2014), the victim would have been fifteen years old. The complaint alleged "on or about Wednesday, July 30, 2014," the victim

44

was sleeping at her mom's house . . . and woke up to someone kissing up and down her left arm and neck. She recognized [the petitioner's] head as the person kissing her. [The petitioner] was leaning across the foot end of the bed toward her. [The victim] then yelled and heard [the petitioner] say, "don't tell don't tell. I'll give you money". Other family members woke up and noticed [the petitioner's] belt unbuckled and his pants undone. [The petitioner] admitted to family members he "did it but didn't touch her". [The petitioner] then crawled out a window, was followed and detained by family mem[]bers until the police arrived.

[The petitioner] told the police he needed help and he did kiss her right arm. [The petitioner] stated he was arrested in 1983 for sexual assault in Oklahoma and spent 29 years in prison and did not get the help he needed in prison.

Dkt. No. 22-2.

The Wisconsin Court of Appeals did not unreasonably apply federal law or make an unreasonable determination of fact when it concluded that the complaint stated probable cause. The complaint alleged that the victim had not yet reached the age of fifteen. It described the petitioner having physical contact with the victim—kissing her arm and neck. It described circumstantial evidence that the petitioner intended to have sexual contact with the victim— his belt was unbuckled, his pants were open, he begged the victim not to tell and offered her money, he lied to her family about having touched her, he attempted to flee and he told police that he had a prior sexual assault conviction and had not gotten the help he needed. It described acts the petitioner took toward the commission of a sexual assault—kissing the victim while she was sleeping, while his belt was unbuckled and pants were open. These facts were more than sufficient to show probable cause that the petitioner attempted to sexually assault the victim but was interrupted before

45

he could do so. That means that the petitioner's lawyer was not ineffective in failing to object to the sufficiency of the complaint.

The petitioner is not entitled to *habeas* relief on his third claim.

    E.    <u>The Petitioner's Argument that He Should Receive a Competency Evaluation</u>

At the end of his reply brief, the petitioner argued that this court should hold a competency hearing and make a competency evaluation. Dkt. No. 26 at 12. This court has no reason to believe that the petitioner was not competent when he filed and briefed the petition. As for any claim that he was not competent when he pled guilty, the petitioner has procedurally defaulted on such a claim because he did not raise it in his opposition to the no-merit brief.

## V.   Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because it believes that reasonable jurists could not debate the court's decision that the petitioner is not entitled to relief under 28 U.S.C. §2254(d).

46

## VI.     Conclusion

The court **DENIES** the petitioner's motion requesting appointed attorney. Dkt. No. 18.

The court **DISMISSES** the petition for writ of *habeas corpus* and **DISMISSES** this case. The clerk will enter judgment accordingly.

The court **GRANTS** the respondent's motion for extension of time to file brief *nunc pro tunc* to December 4, 2020. Dkt. No. 24.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 26th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**